IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASSOCIATION DE PRODUCTORES, EMPACADORES Y EXPORTADORES DE AGAUCATE DE MICHOACAN, A.C. AND ITS MEMBERS,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE CALIFORNIA AVOCADO COMMISSION,<br><br>        Defendant. | 2:08-cv-00439-GEB-DAD<br><br>ORDER<sup>*</sup> |

On April 11, 2008, Defendant filed a motion seeking to transfer venue to the Central District of California under 28 U.S.C. § 1404(a). (Mot., Dkt. No. 11.) Plaintiffs oppose the motion. For the following reasons, the motion to transfer venue is granted.

---

    *    This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

BACKGROUND

Plaintiff, Association de Productores, Empacadores y Exportadores de Aguacate de Michoacan, A.C. ("the Association") is an association of growers, packers and exporters of Hass avocados grown in Mexico. (Compl. ¶ 3.) Defendant, the California Avocado Commission ("CAC") is a corporation created by statute to promote the interests of the California avocado industry through advertising, marketing and research. Cal. Food & Agr. Code §§ 67003, 67005. Plaintiffs allege that in response to the United States Department of Agriculture lifting a 94-year quarantine restriction on the importation of Mexican avocados, the California Avocado Commission

> undertook a massive effort to stop the importation of Mexican-grown avocados into California including, but not limited to, 1) the unrelenting disparagement of the quality of Mexican avocados; 2) the reckless and untrue attribution of phytosanitary risks to California agriculture from the armored scales found on some avocados imported from Michoacan; 3) the promotion of an imaginary and self-serving "conflict" between state and federal regulatory standards (i.e. to exclude Mexican avocados from California because of armored scales and "invasive, unknown species" of dangerous pests); [and] 4) initiation of pressure resulting in CDFA's [California Department of Food and Agriculture's] implementation of a pattern and practice of unlawful inspections and rejection of dozens of truckloads of Mexican avocados previously inspected and approved by federal officials . . . .

(Compl. ¶¶ 8, 9.) Plaintiffs allege they "commenced [this action] to obtain relief for the damages each has suffered that are attributable to the conduct of Defendant. Although CDFA has reversed its policy to comply with the federal law, Plaintiffs seek reasonable compensation for lost profits, and reimbursement of out-of-pocket expenses and meaningful retraction by CAC for the disparagement of its product." (Id. ¶ 42.) Plaintiffs allege the following claims in their

2

Complaint: violation of the Lanham Act, trade libel, interference with contractual relations, interference with prospective economic advantage and negligence.

Plaintiffs initially filed the "same general claims" as intervenors in a CAC action against the United States Department of Agriculture in the Central District. The original plaintiffs and defendants settled that action and the court therefore "address[ed] whether the intervenors should be permitted to continue with their [claims] in light of the dismissal of the original action." Shade v. Johanns, No. 07-2548 (C.D. Cal. Aug. 27, 2007) (civil minutes of scheduling conference). Since jurisdiction was challenged, *inter alia*, the court decided "the question of independent jurisdiction would be brought into sharper focus if intervenors' claims were separated from the original case" and the intervenors were permitted "to re-file their claims in a separate suit, should they desire." Id. The Association "re-filed" their claims in the instant action in the Eastern District.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "This provision gives a district court broad discretion to transfer a case to another district where venue is also proper." Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007). "[T]he purpose of [§ 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)

1 (quoting <u>Continental Grain Co. v. Barge F.B.L.-585</u>, 364 U.S. 19, 26-27
2 (1960)).

> In deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations.

<u>Amini Innovation Corp.</u>, 497 F. Supp. 2d at 1109 (citing 15 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §§ 3841-55 (2d ed. 1986)).  Courts may also consider "the respective parties' contacts with the forum, [and] the contacts relating to the plaintiff's cause of action in the chosen forum . . . ." <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th cir. 2000).  "The burden of establishing that an action should be transferred is on the moving party."  <u>L.A. Memorial Coliseum Comm'n v. Nat'l Football League</u>, 89 F.R.D. 497, 499 (C.D. Cal. 1981); <u>see also</u> <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).  Transfer will not "'be ordered if the result is merely to shift the inconvenience from one party to another.'"  <u>Amini Innovation Corp.</u>, 497 F. Supp. 2d at 1109-11 (quoting Wright & Miller, *supra* § 3848 at 383-86).

A.  <u>The Action May Have Been Brought in the Central District</u>

Under 28 U.S.C. § 1404(a) transfer is only proper if the action might have been brought in the transferee forum.  Under 28 U.S.C. § 1391(b)(1), an action based on federal question jurisdiction may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State . . . ."  The single Defendant in this action, the CAC, resides in the Central District, where its headquarters and only office is located.  (Bellamore Decl. ¶ 2.)  Accordingly, venue is proper in the Central District.

4

B. Plaintiffs' Choice of forum

Defendant argues Plaintiffs' choice of forum should be given minimal consideration because the Association is not a resident of the Eastern District and the events giving rise to the litigation did not occur in the Eastern District. (Mot. at 5:26-17.) Plaintiffs rejoin that "a plaintiff's choice of venue is generally accorded deference." (Opp'n at 3:23-25.) Plaintiffs further argue

> [t]here is a connection between this forum and the acts alleged in the complaint. The CAC's smear campaign involved actions taken by it throughout the entire state. The CAC attempted to prevent the entry of Mexican avocados into the California market in its entirety, not only the Central District. Its dissemination of materials disparaging the quality of Mexican avocados was statewide. CAC communications caused consumers, retailers and distributors throughout California to avoid Mexican avocados and resulted in a drastic reduction of all California sales of Mexican Haas avocados. The challenged communications were republished throughout the state of California and beyond in literally thousands of various forums.

(Opp'n at 4:10-22.)

A "plaintiff's choice of forum 'is entitled to only minimal consideration' when 'the forum of original selection . . . has no particular interest in the parties or subject matter.'" Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998) (quoting Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 954 (9th Cir. 1968)); see also Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ("[N]umerous courts have given less deference to the plainitff's choice of forum where the action has little connection with the chosen forum."). Similarly, "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence

. . . ." <u>Fabus Corp. v. Asiana Exp. Corp.</u>, 2001 WL 253185, *1 (N.D. Cal. Mar. 5, 2001). Plaintiffs' choice of forum is given minimum consideration since the Association and its members reside in Mexico. In addition, while some of the alleged injurous materials were distributed in the Eastern District, the Eastern District does not have a particular interest in this action since, as Defendants indicate, these materials were published in "literally thousands of various forums." <u>See</u> <u>Stuart v. Mobile ESPN</u>, 2006 WL 2433416, *4 (N.D. Cal. Aug. 21, 2006) (rejecting Plaintiffs' argument that the Northern District had an interest in the action since the commercial at issue was broadcast there. "While true, plaintiffs' argument neglects to mention that the same is true of every other district in the nation. Thus, this Court possesses no special interest in adjudicating this matter."). Accordingly, this factor weighs only minimally against transfer.

<u>C. Parties' Contacts with the Forum and Contacts Relating to Plaintiffs' Cause of Action in the Chosen Forum</u>

The parties have little contact with the Eastern District. Neither have offices in this district. To the extent the parties have contacts relating to this action in the Eastern District through the sales of Mexican avocados and the CAC distribution of materials here, these contacts are no greater than the parties' contacts in other districts in California. On the other hand, the CAC maintains its headquarters and only offices in Irvine, California (within the Central District) and the alleged "smear campaign" was conducted out of this office. Accordingly, this factor weighs in favor of transfer.

///

///

D. Convenience of the Parties

> Defendant argues
>
> > the Commission's principal office is located in Irvine, California, under the jurisdiction of the Central District. It would be inconvenient for the Commission to litigate this matter in the Eastern District because most of [] its material witnesses (including members of the Commission) and evidence are located in its office, where it conducts the vast majority of its business.

(Mot. at 7:2-8.)  Defendant also argues that state law is relevant in determining convenience and that under state legislation, the Commission "may be sued only in the county of its principal office." (Mot. at 7:9-16 (quoting Cal. Food & Agric. Code § 67112.5(e) ("§ 67112.5(e)") (citing <u>Straus Family Creamery v. Lynos</u>, 219 F. Supp. 2d 1046, 1048 (N.D. Cal. 2002)).  Plaintiffs rejoin <u>Straus Family Creamery</u> also "considered the defendant's prior appearance and participation in that forum" as evidence of convenience and the CAC previously appeared in the Eastern District as a plaintiff when it filed suit against the United States Department of Food and Agriculture in 2001. (Opp'n at 5:26-6:6.)  Defendant likewise argues that Plaintiffs intervened and filed claims against Defendant in previous litigation in the Central District.  (Mot. at 7:19-24.)

In determining the relative convenience of the parties, courts consider the residence of the parties and personal circumstances of the litigants such as age and financial strength.  15 Wright & Miller, <u>Federal Practice & Procedure</u> § 3849 (3d ed. 2007).  The CAC's only office is in the Central District.  The Association is located in Mexico and provides no evidence that it would be more inconvenienced litigating this action in the Central District than in the Eastern District.  "While [§ 67112.5(e)] is a state venue rule, at

7

the very least it amounts to a determination by the California legislature that" the CAC would be inconvenienced if required to "defend actions" away from its principal office. <u>Straus Family Creamery</u>, 219 F. Supp. 2d at 1048. The fact that the CAC has found it in its interest to bring suits in other districts does not mean that doing so was convenient. Accordingly, this factor weighs in favor of transfer.

<u>E. Convenience of Witnesses</u>

Defendant argues "most, if not all of the material witnesses who may testify to the Commission's alleged conduct are located in the Central District. Given Plaintiff's residence in Mexico, presumably any material witnesses with knowledge of Plaintiff's alleged damages will reside in Mexico." (Mot. at 8:1-5.) Plaintiffs rejoin that Defendant's "vague generalizations" fail to establish that the convenience of witnesses weigh in favor of transfer. (Opp'n at 6:23-7:7.) Plaintiffs further argue that their "potential witnesses include officials and employees of the CDFA, which maintains its office in Sacramento." (Opp'n at 7:16-19.)

Neither party "supplied [anything] in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony." <u>Heller Fin., Inc. v. Midwhey Powder Co.</u>, 883 F.2d 1286, 1293-94 (7th Cir. 1989). Accordingly, the convenience of witnesses is not considered as a reason to transfer venue. <u>See</u> <u>Prentice-Hall Corp. Sys., Inc. v. Ins. Co. of No. Am.</u>, 81 F.R.D. 477, 480 (S.D.N.Y. 1979) ("In view of [defendant's failure to name witnesses] I cannot consider their potential testimony as a reason to transfer the action.").

8

F. Ease of Access to Evidence

Defendant argues "the Commission, as well as most of the material witnesses reside in Southern California. Therefore, presumably, any documentary evidence is located at the Commission's office in Irvine." (Mot. at 8:9-11.) Plaintiffs rejoin "the contrary is true and . . . and most documentary evidence will not be located in the Central District." (Opp'n at 8:1-3.)

Again, neither party has made a sufficient showing on this factor. In addition, the ease of access to evidence "is no longer weighed heavily given the modern advances in communication and transportation." Silverlit Toys Manufactory, Ltd. v. Absolute Toy Mktg., Inc., 2007 WL 521239, *11 (N.D. Cal. Feb. 15, 2007) (citing Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998).

G. Interests of Justice and Administrative Considerations

Defendant argues "if the Court transfers this action to the Central District . . . Plaintiff[s] will not suffer any prejudice due to any minimal resulting delay since this case is still in the initial stages." (Mot. at 9:9-16.) Plaintiffs rejoin "[t]here is not related litigation between [the parties] in the Central District of California, so consolidation is not an issue. [And Defendant] has submitted no evidence regarding the interest of justice . . . ." (Opp'n at 8:8-15.)

"The 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case . . . ." Heller Fin., Inc., 883 F.2d at 1293. Plaintiffs filed their Complaint March 26, 2008. (Dkt. No. 1.) Accordingly, "there will be little waste of the Court's or the parties' time and energy by transferring

1  this action to the Central District since the action is fledgling."
2  Nat'l Computer Ltd., v. Tower Indus., Inc., 708 F. Supp. 281, 284
3  (N.D. Cal. 1989).  In addition, it is "more appropriate to place [the
4  burden on citizens who may serve as jurors] on citizens of the Central
5  District since . . . the defendant[] maintain[s its] headquarters in
6  the Central District, while no parties have an office or place of
7  business in the [Eastern District]."  Id. at 284.  Accordingly, this
8  factor favors transfer.

## CONCLUSION

10     The analysis of the above factors reveals that Defendant's
11  motion to transfer venue to the Central District should be granted.
12  Only Plaintiffs' choice of forum weighs against transfer — and only
13  minimally so.  The parties' contacts with the forum, contacts relating
14  to Plaintiffs' cause of action in the chosen forum, convenience of the
15  parties, and the appropriate forum to burden potential jurors all
16  weigh in favor of transferring venue to the Central District.  "Simply
17  put, this district has little connection to this lawsuit, and
18  certainly no connection that is significantly greater than that of any
19  other district in" California.  Stuart, 2006 WL 2433416, at *5
20  (Granting motion to transfer venue because "this district has only a
21  minimal interest in this dispute, and . . . New York constitutes a
22  somewhat more convenient forum.")  The Central District, on the other
23  hand, is where the California Avocado Commission is located, making
24  litigation there more convenient for Defendant, and the Central
25  District has a stronger connection to the actions that led to the
26  injuries about which Plaintiffs complain.  Plaintiffs have
27  demonstrated no reason why litigating in the Eastern District would be
28  more convenient for them, or why litigating in the Central District

10

1 would be inconvenient.  **Accordingly, the Clerk of this Court is**
2 **directed to transfer this case to the United States District Court for**
3 **the Central District of California.**
4             IT IS SO ORDERED.
5 Dated:  May 20, 2008

            _____
            GARLAND E. BURRELL, JR.
            United States District Judge